UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

CATHERINE ERFURDT, Personal Representative
of the Estate of MARY JANE MALONE, Deceased

    Plaintiff,

v

UNITED STATES OF AMERICA,

    Defendant.

Civil No.

Hon.

---

EMILY M. PEACOCK  (P64410)
RONDA M. LITTLE (P47236)
OLSMAN MacKENZIE PEACOCK
& WALLACE, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
248-591-2300 / 248-591-2304 [fax]
epeacock@olsmanlaw.com

---

*There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in this Complaint.*

_____
*Emily M. Peacock, Esq.*

**COMPLAINT AND AFFIDAVITS OF MERIT SIGNED BY
SCOTT LEVIN, M.D., AND AMY TIERSTEN, M.D.**

NOW COMES the Plaintiff, Catherine Erfurdt, Personal Representative of the Estate of Mary Jane Malone, and her attorneys, OLSMAN MacKENZIE PEACOCK & WALLACE, PC, and does hereby complain against the defendant United States of America in a civil action, stating unto this Court as follows:

**NATURE OF THE CASE**

1.    This medical malpractice case involves a 15-month delay in diagnosing and treating breast cancer resulting in the death of Mary Jane Malone, age 78.

## THE PARTIES

### Plaintiff

2. Catherine Erufurdt was appointed Personal Representative of the Estate of Mary Jane Malone on December 18, 2020, by Order of Presque Isle Probate Court.

3. As personal representative, Ms. Erufurdt, is authorized and empowered to pursue all claims on behalf of the estate and interested parties under the Michigan Wrongful Death Act. MCL §600.2922 and the Federal Torts Claims Act 28 USC§ 1346(b)(1).

4. Prior to her death, Ms. Malone was a resident of Rogers City, which is located in Presque Isle County, in the State of Michigan.

5. Catherine Erufurdt is a resident of the City of Thurmont, County of Frederick, State of Maryland.

### Defendant

6. Defendant United States of America (hereinafter referred to as United States) includes the U.S. Department of Health and Human Services, Thunder Bay Community Health Service, Inc. (herinafter TBCHS), Marion Hautea, M.D., and Manuel Hernandez, M.D.

7. The U.S. Department of Health and Human Services (DHHS) is an authorized federal agency of defendant United States.

8. At all times relevant hereto to this Complaint, TBCHS, was a corporation organized under the laws of the State of Michigan, located and conducting business in the City of Rogers City, County of Presque Isle, State of Michigan.

9. At all times pertinent to this Complaint, TBCHS, was a Federally Qualified Health Center pursuant to 42 USC §233(g)(k) operating under the DHHS.

10. TBCHS, at all times relevant to the allegations of this Complaint, operated a health care facility and held itself out as qualified to provide care and treatment of the general public, including decedent Mary Jane Malone.

11. At all times relevant hereto, TBCHC, held itself out to the public as a medical care facility which employed skilled and competent medical personnel including physicians and other health care providers.

12. Marion Hautea, M.D., is a physician licensed to practice medicine in the State of Michigan, who, at all times relevant hereto, practiced in Presque Isle County, Michigan.

13. Manuel Hernandez, M.D., is a physician licensed to practice medicine in the State of Michigan, who, at all times relevant hereto, practiced in Presque Isle County, Michigan

14. Dr. Hautea held himself out to the public as a family medicine physician, capable of providing medical care to the public, including decedent Mary Jane Malone.

15. Dr. Hernandez held himself out to the public as a family medicine physician, capable of providing medical care to the public, including decedent Mary Jane Malone.

16. Dr. Hautea was at all times relevant hereto, an employee, agent, ostensible agent and/or representative of TBCHC. As a result, the United States is vicariously liable for the professional negligence and/or malpractice committed by him with regard to decedent Mary Jane Malone as is set forth herein.

17. Dr. Hernandez was at all times relevant hereto, an employee, agent, ostensible agent and/or representative of TBCHC. As a result, the United States is vicariously liable for the professional negligence and/or malpractice committed by him with regard to decedent Mary Jane Malone as is set forth herein.

**Jurisdiction and Venue**

18. The amount in controversy herein exceeds Seventy-Five Thousand ($75,000.00) Dollars.

19. Plaintiff properly presented an Administrative Tort Claim (Tort Claim) for medical negligence to the Department of Health and Human Services (DHHS) pursuant to 28 USC §2675(a), along with all relevant medical records via email on June 3, 2021 (Exhibit 1). The Tort Claim and records were also sent via fax on June 4, 2021. (Exhibit 2) and sent via Federal Express with receipt by DHHS on June 7, 2021. (Exhibit 3).

20. In a letter dated August 25, 2021, DHHS acknowledged receipt of the Tort Claim on June 3, 2021. (Exhibit 4).

21. It has been more than six months since the claim was received by DHHS, and no agency action has been taken, thereby permitting the filing of this complaint. 28 USC §2401(b).

22. This Complaint sets forth the cause of action delineated in the Tort Claim submitted to the defendant DHHS on June 3, 2021.

23. The United States has waived governmental immunity and consented to this lawsuit pursuant to 28 USC §1346(b)(1).

24. The Court has jurisdiction over the defendant pursuant to 28 USC §1346(b) and/or 28 USC §1331.

25. Venue is proper in the Eastern District of Michigan as it is the situs of the events giving rise to this action which occurred in Presque Isle County, Michigan.

**FACTUAL ALLEGATIONS**

26. Prior to the events in question, Ms. Malone was active, independent, and in good health.

27. Ms. Malone obtained her primary medical care at TBCHS.

28. Marion Hautea, M.D., a family physician, provided care to Ms. Malone at TBCHS since 2015.

29. Ms. Malone had yearly benign mammograms from 2011-2016 and in 2018.

30. No mammogram was ordered in 2017 or 2019.

31. From 2011-2014, the employees of TBCHS performed regular breast inspections and examinations and documented no asymmetry, skin changes, nipple discharge, masses, or tenderness.

32. After Dr. Hautea took over Ms. Malone's care in 2015, there is no documentation of any breast inspections/exams.

33. On July 15, 2019, Ms. Malone had an office visit with Marion Hautea, M.D.

34. At that time, she reported a painless lump under her left armpit, a 5-pound weight loss, and fatigue.

35. Exam confirmed a palpable cyst in the left armpit area.

36. No measurement of the lump was recorded, and no breast examination was documented.

37. The assessment was "Rib pain left sided, possible muscle strain," and "Fatigue."

38. A chest x-ray and labs were ordered.

39. Ms. Malone was instructed to schedule a follow-up visit in 6 months.

40. The chest x-ray was performed on July 15, 2019 at Mid-Michigan Medical Center-Alpena.

41. The radiologist, Rebecca Delancey, M.D.'s, impression was:

> Hyper-inflated but clear lungs.
>
> Patient is reporting a palpable abnormality in her left axilla. <u>Bilateral diagnostic mammogram with left axillary ultrasound is recommended, if clinically warranted</u>.

42. The radiology report was electronically authenticated by Ms. Delancey on July 16, 2019.

43. There is no documentation that Marion Hautea, M.D., or any other employee and/or agent of TBCHS timely reviewed Ms. Malone's radiology report.

44. Over the next 15 months, Ms. Malone continued to treat with TBCHS for her medical care needs.

45. There was no documentation regarding the radiology recommendations for mammogram and left axillary ultrasound and there was no documentation of a breast exam or further assessment of the axillary lump.

46. Specifically, on September 14, 2019, Ms. Malone was seen by Manual Hernandez, M.D. for sinus pressure, headache, and coughing.

47. Dr. Hernandez diagnosed sinusitis and ordered antibiotics, Medrol dose pack, Mucinex and Flonase.

48. Under "Medical Decision Making" Dr. Hernandez noted that he reviewed/ordered radiology tests. However, no imaging was ordered and there was no follow-up of the axillary lump.

49. On January 6, 2020, Ms. Malone was seen by Marion Hautea, M.D. for a follow-up visit for her hypertension.

50. She reported that her husband had died in November, and she was still grieving. (Under "Social History", it is noted that Ms. Malone is still living with her spouse and that her partner is in fair health.)

51. Dr. Hautea failed to examine the axillary lump or breast tissue or pursue a diagnostic work-up.

52. On March 16, 2020, Mrs. Malone, was seen by Dr. Hautea in follow-up for her hypertension. (Under "Social History", it continues to incorrectly note that Ms. Malone is living with her spouse and that he is in fair health.)

53. Dr. Hautea failed to examine the axillary lump, perform a breast exam, or pursue a diagnostic work-up.

54. On September 23, 2020, Mrs. Malone was seen by Marion Hautea, MD, in follow-up for her hypertension. Also, she reported back pain.

55. The records continue to incorrectly indicate Ms. Malone was living with her spouse, who was in fair health.

56. Dr. Hautea did not evaluate the lump or perform a breast exam. No diagnostic work-up was ordered.

57. On October 7, 2020, Mrs. Malone was seen at TBCHS by Cori Williams, N.P., for a blood pressure check.

58. Ms. Malone reported getting lost recently in her hometown and being confused.

59. The impression was transient ischemic attack (TIA), and an ultrasound of the carotids and an MRI of the brain were ordered.

60. Prior to performance of this work-up, on October 16, 2020, Ms. Malone was involved in a minor motor vehicle accident.

61. Ms. Malone was found to be confused and was taken to Mid-Michigan Medical Center-Alpena.

62. Work-up, including CT imaging, revealed a suspicious mass in the left axilla and breast, with concern for metastatic spread to multiple sites including the liver, lungs, and brain.

63. Ms. Malone was transferred to Munson Medical Center for further work-up/treatment.

64. At Munson Medical Center, the History & Physical notes "she has no known history of cancer; however, she has a lump in her left axilla which has been present for approximately 1 ½ years and attributed to a "pulled muscle" per patient. She reports she had an x-ray done at symptom onset, but no further evaluation.

65. Exam revealed "multiple palpable nodules in the left axillar (3 o'clock position), which are tender to palpation and have overlying skin changes."

66. On October 18, 2020, an ultrasound-guided biopsy of the left breast was performed at Munson Medical Center.

67. The biopsy was non-diagnostic due to necrosis.

68. On November 4, 2020, an excisional biopsy of the left lateral breast mass was performed at Mid-Michigan Medical Center-Alpena.

69. The final pathological diagnosis was poorly differentiated invasive ductal carcinoma of the left breast, ER/PR and HER 2 negative, Stage IV.

70. Ms. Malone was seen by oncologist, William Hitzelberger, D.O., and radiation oncologist, Mario Lacerna, M.D.

71. Dr. Lacerna recommended radiation for the brain metastasis, in the hope of stabilizing neurologic function.

72. However, after receiving brain radiation, Ms. Malone developed left-sided paralysis (hemiplegia).

73. On November 21, 2020, Ms. Malone was hospitalized with confusion, weakness, and fever.

74. Imaging of the brain revealed edema and midline shift.

75. Ms. Malone went into a coma, was placed on hospice care, and died on November 26, 2020.

76. The death certificate lists the cause of death as breast cancer with metastasis to the brain.

77. Ms. Malone left surviving her daughter, Catherine Erfurdt; her son, Anthony Malone; and her grandchildren, Kelly Erfurdt and Kristine Erfurdt.

## COUNT I
## MEDICAL NEGLIGENCE- UNITED STATES

78. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 76 of this complaint inclusive as if set forth paragraph by paragraph.

79. That defendant, United States, by and through its employees, agents and/or ostensible agents, including but not limited to, Dr. Hautea and Dr. Hernandez, owed a duty to Mary Jane Malone to adhere to the applicable standards of care for a family medicine physician.

80. The employees, agents, and/or ostensible agents of defendant United States, including but not limited to, Dr. Hautea and Dr. Hernandez, breached the duties owed to Mary Jane Malone, when they failed to:

   a. Act in accordance with the standard of care for family medicine physicians, including but not limited to, the appropriate evaluation, diagnosis, and treatment of Mrs. Malone.

   b. Consider breast cancer as a differential diagnosis, given Mrs. Malone's signs, symptoms, and complaints, which included but were not limited to, a left axillary mass, weight loss and fatigue.

   c. Obtain an appropriate history and perform an appropriate physical examination in response to the new left axillary mass, including but not limited to complete examination of the mass and the breast tissue.

   d. Obtain and review the results of the July 15, 2019 chest x-ray in a timely manner.

   e. Order an appropriate work-up in response to the left axillary mass, including but not limited to a bilateral diagnostic mammogram and ultrasound as recommended by the radiologist in the July 16, 2019 radiology report.

  f. Timely refer Ms. Malone to appropriate specialists, including a surgeon, for performance of a timely diagnostic evaluation, including biopsy of the left axillary mass.

  g. Inform Ms. Malone of the potential for cancer and of the need for close monitoring and further evaluation.

  h. Closely monitor and follow-up of the left axillary mass first noted on July 15, 2019, to ensure improvement and resolution of the presumed muscle strain.

  i. Re-evaluate the axillary mass and breast tissue on a set schedule and at all subsequent visits.

  j. Take all action necessary to permit timely diagnosis and treatment of Ms. Malone's breast cancer.

  k. Perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

81. That the defendant United States is legally responsible for the professional negligence and/or malpractice on the part of its employees, agents, and/or ostensible agents, including, but not limited to, Dr. Hautea and Dr. Hernandez, as set forth herein, pursuant to the doctrines of vicarious liability, *respondeat superior* and/or obstensible agency as defined by *Grewe v. Mt. Clemens General Hospital*, 404 Mich 240, 273 NW2d 429 (1978).

82. That as a direct and proximate result of the professional negligence and/or malpractice of the employees, agents, and/or ostensible agents of defendant United States, including but not limited to, Dr. Hautea, and Dr. Hernendez, there was an approximate 15-month delay in diagnosing and treating Mary Jane Malone's breast cancer resulting in growth and spread of the cancer, with distant metastasis to multiple sites, including the brain, and death.

83. The physical injuries to Mary Jane Malone, fall within MCL 600.1483(1)(a)(i) and (b) as Ms. Malone had metastasis to the brain with hemiplegia and permanently impaired cognitive capacity which rendered her incapable of making independent, responsible life decisions, and permanently incapable of performing the activities of normal, daily living.

84. Plaintiff requests all damages allowed by the Federal Torts Claims Act, MCL 600.1483(1)(a)(i) and (b), and MCL 600.2922, including but not limited to:

   a. Reasonable compensaion for the pain and suffering experienced by Mary Jane Malone during the time between her injury and her death.

   b. Reasonable compesnation for medical, hospital, funeral and burial expenses;

   c. Losses suffered by the next of kin as a result of decedent's death, including the following:

      (i) Loss of society and companionship
      (ii) Loss of gifts, gratuities, services and/or financial support.

   d. Such other injuries and damages which will be determined through the further course of discovery.

WHEREFORE, Catherine Erufurdt, Personal Representative of Mary Jane Malone, requests the Court enter judgment against the United States in such amount as is determined to be fair and reasonable together with interest, costs, and attorney fees.

OLSMAN MACKENZIE PEACOCK & WALLACE, P.C.

*/s/ Emily M. Peacock*

Ronda M. Little (P47236)
Emily Peacock (P64410)
Attorneys for Plaintiff
2684 West Eleven Mile Road
Berkley, MI 48072
248-591-2300 / (248) 591-2304 [fax]

Dated: January 10, 2022

## AFFIDAVIT OF MERIT
## OF SCOTT LEVIN, M.D.

STATE OF ILLINOIS     )
                              )ss.
COUNTY OF _____ )

      I certify that I have reviewed the Notice of Intent to File a Claim pursuant to MCLA 600.2912(b), MSA 27A.2912(2), and all medical records supplied to me by Plaintiff's attorneys with regard to MARY JANE MALONE concerning the allegations contained in the Notice. I further certify that during the year immediately preceding the date of the occurrence that is the basis for this claim, I devoted a majority of my professional time to the active clinical practice of Family Medicine and/or the instruction of students in an accredited health professional school or clinical research program in Family Medicine. The opinions expressed in this Affidavit are based upon documents and materials referred to above, and are subject to modification based on additional information, which might be provided at some future date. I also state the following:

**A.**    **The Applicable Standard of Practice or Care**

      The standard of care applicable to the physicians at Thunder Bay Community Health Services, Inc., and MidMichigan Health, who were involved in the care and treatment of Mary Jane Malone, including but not limited to Marion Hautea, M.D., is that of a physician specializing and board certified in family medicine. At a minimum, the applicable standard of practice or care required Marion Hautea, M.D., and any other involved family medicine physician to:

1. Act in accordance with the standard of care for family medicine physicians, including but not limited to, the appropriate evaluation, diagnosis, and treatment of Mrs. Malone.

2. Consider breast cancer as a differential diagnosis, given Mrs. Malone's signs, symptoms, and complaints, which included but were not limited to, a left axillary mass, weight loss and fatigue.

3. Obtain an appropriate history and perform an appropriate physical examination in response to the new left axillary mass, including but not limited to complete examination of the mass and the breast tissue.

4. Obtain and review the results of the July 15, 2019 chest x-ray in a timely manner.

5. Order an appropriate work-up in response to the left axillary mass, including but not limited to a bilateral diagnostic mammogram and ultrasound as recommended by the radiologist in the July 16, 2019 radiology report.

6. Timely refer Mrs. Malone to appropriate specialists, including a surgeon, for performance of a timely diagnostic evaluation, including biopsy of the left axillary mass.

7. Inform Mrs. Malone of the potential for cancer and of the need for close monitoring and further evaluation.

8. Closely monitor and follow-up of the left axillary mass first noted on July 15, 2019, to ensure improvement and resolution of the presumed muscle strain.

9. Re-evaluate the axillary mass and breast tissue on a set schedule and at all subsequent visits.

10. Take all action necessary to permit timely diagnosis and treatment of Mrs. Malone's breast cancer.

11. Perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

The standard of care applicable to the physicians at Thunder Bay Community Health Services, Inc, and MidMichigan Health. who were involved in the care and treatment of Mary Jane Malone, including but not limited to Manuel Hernandez, M.D., is that of a physician specializing and board certified in family medicine. At a minimum, the applicable standard of practice or care required by Manual Hernandez, M.D., and any other involved family medicine physician to:

1. Act in accordance with the standard of care for family medicine physicians, including but not limited to, the appropriate evaluation, diagnosis, and treatment of Mrs. Malone.

2. Consider breast cancer as a differential diagnosis, given Mrs. Malone's signs, symptoms, and complaints, which included but were not limited to, a left axillary mass, weight loss and fatigue.

3. Obtain an appropriate history and perform an appropriate physical examination in response to the new left axillary mass, including but not limited to complete examination of the mass and the breast tissue.

4. Obtain and review the results of the July 15, 2019 chest x-ray in a timely manner.

5. Order an appropriate work-up in response to the left axillary mass, including but not limited to a bilateral diagnostic mammogram and ultrasound as recommended by the radiologist in the July 16, 2019 radiology report.

6. Timely refer Mrs. Malone to appropriate specialists, including a surgeon, for performance of a timely diagnostic evaluation, including biopsy of the left axillary mass.

7. Inform Mrs. Malone of the potential for cancer and of the need for close monitoring and further evaluation.

8. Closely monitor and follow-up of the left axillary mass first noted on July 15, 2019, to ensure improvement and resolution of the presumed muscle strain.

9. Re-evaluate the axillary mass and breast tissue on a set schedule and at all subsequent visits.

10. Take all action necessary to permit timely diagnosis and treatment of Mrs. Malone's breast cancer.

11. Perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

Since Thunder Bay Community Health Service, Inc. and MidMichigan Health are being held vicariously liable for their employees and/or agents including Manuel Hernandez, M.D., the actions that should have been taken by Manuel Hernandez, M.D. apply vicariously to said corporations.

**B.      The Applicable Standard of Practice or Care Was Breached**

The family medicine physicians at Thunder Bay Community Health Service, Inc. and MidMichigan Health, who were involved in the care and treatment of Mary Jane Malone including, but not limited to, Marion Hautea, breached the applicable standard of practice or care when they failed to:

1. Act in accordance with the standard of care for family medicine physicians, including but not limited to, the appropriate evaluation, diagnosis, and treatment of Mrs. Malone.

2. Consider breast cancer as a differential diagnosis, given Mrs. Malone's signs, symptoms, and complaints, which included but were not limited to, a left axillary mass, weight loss and fatigue.

3. Obtain an appropriate history and perform an appropriate physical examination in response to the new left axillary mass, including but not limited to complete examination of the mass and the breast tissue.

4. Obtain and review the results of the July 15, 2019 chest x-ray in a timely manner.

5. Order an appropriate work-up in response to the left axillary mass, including but not limited to a bilateral diagnostic mammogram and ultrasound as recommended by the radiologist in the July 16, 2019 radiology report.

6. Timely refer Mrs. Malone to appropriate specialists, including a surgeon, for performance of a timely diagnostic evaluation, including biopsy of the left axillary mass.

7. Inform Mrs. Malone of the potential for cancer and of the need for close monitoring and further evaluation.

8. Closely monitor and follow-up of the left axillary mass first noted on July 15, 2019, to ensure improvement and resolution of the presumed muscle strain.

9. Re-evaluate the axillary mass and breast tissue on a set schedule and at all subsequent visits.

10. Take all action necessary to permit timely diagnosis and treatment of Mrs. Malone's breast cancer.

11. Perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

The family medicine physicians at Thunder Bay Community Health Service, Inc., and MidMichigan Health, who were involved in the care and treatment of Mary Jane Malone, including, but not limited to, Manuel Hernandez, M.D., breached the applicable standard of practice or care when they failed to:

1. Act in accordance with the standard of care for family medicine physicians, including but not limited to, the appropriate evaluation, diagnosis, and treatment of Mrs. Malone.

2. Consider breast cancer as a differential diagnosis, given Mrs. Malone's signs, symptoms, and complaints, which included but were not limited to, a left axillary mass, weight loss and fatigue.

3. Obtain an appropriate history and perform an appropriate physical examination in response to the new left axillary mass, including but not limited to complete examination of the mass and the breast tissue.

4. Obtain and review the results of the July 15, 2019 chest x-ray in a timely manner.

5. Order an appropriate work-up in response to the left axillary mass, including but not limited to a bilateral diagnostic mammogram and ultrasound as recommended by the radiologist in the July 16, 2019 radiology report.

6. Timely refer Mrs. Malone to appropriate specialists, including a surgeon, for performance of a timely diagnostic evaluation, including biopsy of the left axillary mass.

7. Inform Mrs. Malone of the potential for cancer and of the need for close monitoring and further evaluation.

8. Closely monitor and follow-up of the left axillary mass first noted on July 15, 2019, to ensure improvement and resolution of the presumed muscle strain.

9. Re-evaluate the axillary mass and breast tissue on a set schedule and at all subsequent visits.

10. Take all action necessary to permit timely diagnosis and treatment of Mrs. Malone's breast cancer.

11. Perform other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

C. **The Actions that Should Have Been Taken or Omitted in Order to have Complied With the Applicable Standard of Practice or Care**

At a minimum, in order to achieve compliance with the applicable standard of practice or care, the family physicians at Thunder Bay Community Health Services, Inc. and MidMichigan Health, who were involved in the care and treatment of Mary Jane Malone, including, but not limited to Marion Hautea, M.D., should have:

1. Acted in accordance with the standard of care for family medicine physicians, including but not limited to, the appropriate evaluation, diagnosis, and treatment of Mrs. Malone.

2. Considered breast cancer as a differential diagnosis, given Mrs. Malone's signs, symptoms, and complaints, which included but were not limited to, a left axillary mass, weight loss and fatigue.

3. Obtained an appropriate history and performed an appropriate physical examination in response to the new left axillary mass, including but not limited to complete examination of the mass and the breast tissue.

4. Obtained and reviewed the results of the July 15, 2019 chest x-ray in a timely manner.

5. Ordered an appropriate work-up in response to the left axillary mass, including but not limited to a bilateral diagnostic mammogram and ultrasound as recommended by the radiologist in the July 16, 2019 radiology report.

6. Timely referred Mrs. Malone to appropriate specialists, including a surgeon, for performance of a timely diagnostic evaluation, including biopsy of the left axillary mass.

7. Informed Mrs. Malone of the potential for cancer and of the need for close monitoring and further evaluation.

8. Closely monitored and followed up of the left axillary mass first noted on July 15, 2019, to ensure improvement and resolution of the presumed muscle strain.

9. Re-evaluated the axillary mass and breast tissue on a set schedule and at all subsequent visits.

10. Taken all action necessary to permit timely diagnosis and treatment of Mrs. Malone's breast cancer.

11. Performed other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

At a minimum, in order to achieve compliance with the applicable standard of practice or care, the family physicians at Thunder Bay Community Health Services, Inc. and MidMichigan Health, who were involved in the care and treatment of Mary Jane Malone, including, but not limited to Manuel Hernandez, M.D., should have:

1. Acted in accordance with the standard of care for family medicine physicians, including but not limited to, the appropriate evaluation, diagnosis, and treatment of Mrs. Malone.

2. Considered breast cancer as a differential diagnosis, given Mrs. Malone's signs, symptoms, and complaints, which included but were not limited to, a left axillary mass, weight loss and fatigue.

3. Obtained an appropriate history and performed an appropriate physical examination in response to the new left axillary mass, including but not limited to complete examination of the mass and the breast tissue.

4. Obtained and reviewed the results of the July 15, 2019 chest x-ray in a timely manner.

5. Ordered an appropriate work-up in response to the left axillary mass, including but not limited to a bilateral diagnostic mammogram and ultrasound as recommended by the radiologist in the July 16, 2019 radiology report.

6. Timely referred Mrs. Malone to appropriate specialists, including a surgeon, for performance of a timely diagnostic evaluation, including biopsy of the left axillary mass.

7. Informed Mrs. Malone of the potential for cancer and of the need for close monitoring and further evaluation.

8. Closely monitored and followed up of the left axillary mass first noted on July 15, 2019, to ensure improvement and resolution of the presumed muscle strain.

9. Re-evaluated the axillary mass and breast tissue on a set schedule and at all subsequent visits.

10. Taken all action necessary to permit timely diagnosis and treatment of Mrs. Malone's breast cancer.

11. Performed other actions to achieve compliance with the standard of care as may be learned during discovery in this case.

### D. The Manner in Which the Breach of the Standard of Practice or Care was a Proximate Cause of the Injury Alleged

As the direct and proximate result of the deviations from the standard of care set forth above, there was an approximate 15-month delay in diagnosing and treating Mary Jane Malone's breast cancer, resulting in growth and spread of the cancer, with distant metastasis to multiple sites, including the brain, and death. If the standard of care had been complied with, as set forth above, it is more likely than not, that Mrs. Malone would have been diagnosed with a lower stage of breast cancer and that with timely treatment she would have survived.

_S. Levin, MD_
SCOTT LEVIN, M.D.

Subscribed and sworn to before me
this **20TH** day of **MAY** 2021

_Vineata Smith_
Notary Public
County of **COOK**
State of **ILLINOIS**
My commission expires **FEB. 3, 2025**

VINEATA SMITH
Official Seal
Notary Public - State of Illinois
My Commission Expires Feb 3, 2025

7

**AFFIDAVIT OF MERIT**
**OF AMY TIERSTEN, M.D.**

STATE OF NEW YORK   )
                    )ss.
COUNTY OF _____ )

I am a Physician, board certified in Internal Medicine, with a sub-specialty in Medical Oncology. I have reviewed the Notice of Intent to File a Claim pursuant to MCLA 600.2912(b), MSA 27A.2912(2), and all medical records supplied to me by Plaintiff's attorneys with regard to MARY JANE MALONE. The opinions expressed in this Affidavit are based upon documents and materials referred to above, and are subject to modifications based on additional information, which might be provided at some future date. I also state the following:

**A.  The Manner in Which the Breach of the Standard of Practice or Care was a Proximate Cause of the Injury Alleged**

As the direct and proximate result of the deviations from the standard of care set forth above, there was an approximate 15-month delay in diagnosing and treating Mary Jane Malone's breast cancer, resulting in growth and spread of the cancer, with distant metastasis to multiple sites, including the brain, and death. If the standard of care had been complied with, as set forth above, it is more likely than not, that Mrs. Malone would have been diagnosed with Stage II breast cancer. Additionally, it is highly probable that with timely treatment, including but not limited to chemotherapy, surgery, and potentially radiation, Mrs. Malone would have survived.

_____
AMY TIERSTEN, M.D.

Subscribed and sworn to before me
this _18_ day of _May_ 2021

_____
Notary Public
County of _Oakland_
State of _Michigan_
My commission expires _02/08/2026_
Notarized using electronic/remote technology.

HANNAH PAWLICKI
Notary Public - State of Michigan
County of Oakland
My Commission Expires Feb 8, 2026
Acting in the County of _Oakland_